UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALEX YUDZON, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 18-2076 (TFH) |
| SAGE TITLE GROUP, LLC, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This case arises out of a residential property sale that occurred in the summer of 2015. After the sale was complete and title was transferred to Alex Yudzon, the purchaser, Mr. Yudzon learned of various housing and D.C. Code violations that encumbered his ability to enforce the rental agreement and/or sell the property. Mr. Yudzon now sues Sage Title Group, LLC and argues that Sage breached its duties as settlement agent resulting in Mr. Yudzon's purchase of the encumbered property. Sage moves to dismiss the Amended Complaint.

**I.     BACKGROUND**

In summer 2015, Alex Yudzon purchased a Condominium Unit located in Washington, DC. Am. Compl. [Dkt. 14] ¶ 3.[1] Mr. Yudzon purchased the unit from Caroline Taylor and her late husband, John P. Shumate (collectively, the Sellers). Mem. of P. & A. in Supp. of Mot. to Dismiss Am. Compl. (Def.'s Mem.) [Dkt. 15-1] at 1; *see also* Mem., Ex. A, Regional Sales Contract [Dkt. 15-3] at 1. At the time of the purchase and the filing of this litigation, Mr.

---

[1] The Amended Complaint includes multiple exhibits and all documents were filed in the same ECF entry, docket 14. Any citations to the contents of the Amended Complaint itself will reference the paragraph number and any citations to exhibits will refer to the ECF page number in docket 14.

1

Yudzon resided in New York City. Am. Compl. ¶ 14. Mr. Yudzon purchased the unit as an investment and with the possibility of residing there himself in the future. *Id*. ¶¶ 3, 14. At the time of sale, the unit was tenant occupied. *Id*. ¶ 4.

To assist in finalization of the sale, Mr. Yudzon and the Sellers hired Sage Title Group, LLC to "serve as a settlement and escrow agent and title insurance issuing agency on the closing." *Id*. ¶ 7. Sage provided Mr. Yudzon with a "Scope of Work and Fee Disclosure" statement that described the services to be provided during the sale. *Id*. ¶ 13; *see also* Am. Compl, Ex. 2, Scope of Work and Fee Disclosure at 21. The purchase agreement was signed on June 3, 2015 and the closing took place on July 31, 2015. *Id*. ¶ 5. At the time the purchase agreement was signed, the Sellers had not yet complied with the District of Columbia's Tenant Opportunity to Purchase Act (TOPA) requirements.[2] Def.'s Mem. at 1; Am. Compl., Ex. 1, Tenancy Addendum at 18. Carolyn Burns represented Sage Title at the closing. *Id*. ¶ 9.

At the closing, the Sellers provided declarations regarding the TOPA requirements. One declaration was signed by the Sellers and affirmed under penalty of perjury that

> 2. The Agreement of Sale requires that First American Title Insurance Company . . . provide title insurance coverage against loss or damage arising from the initiation of a legal action in a court of competent jurisdiction seeking a judicial decree that the transaction in which the Seller conveyed title to the Property to the Purchaser was not conducted in such a way as to extinguish the rights of purchase or first refusal or other rights of any tenant or tenant association pursuant to D.C. Code Section 42-3404.01 et seq., and as amended ("TOPA Rights").
>
> 3. To the knowledge of Seller, no tenant or tenant association is presently asserting a claim of any TOPA Rights, or asserting that the transaction by which Seller is selling to Purchaser is not being

---

[2] The Tenant Opportunity to Purchase Act (TOPA) requires owners of housing accommodations that are tenant occupied to provide notice of an intent to sell and "give the tenant an opportunity to purchase the housing accommodation at a price and terms that represent a bona fide offer of sale." D.C. Code § 42-3404.02(a).

> conducted in such a way as to extinguish the TOPA Rights of any and all tenants and/or tenant association(s).
>
> 4. To the knowledge of Seller, there is no pending litigation or threatened litigation arising from the assertion of a TOPA claim by a tenant or a tenant association which may affect title to the Property.

Def.'s Mem., Ex. B, TOPA Affidavit - Seller [Dkt. 15-3].  Two more declarations were signed by Yuri Gripas and Alexandra Gripas, tenants of the unit, and affirmed under penalty of perjury that they were aware of the TOPA requirements and did not intend to exercise their rights to purchase under TOPA.  *See* Am. Compl, Ex. 3, Tenant Opportunity to Purchase Affidavits at 23-26.  Notably, while both Mr. and Mrs. Gripas signed TOPA declarations, the Tenancy Addendum to the Contract for Sale of the Unit only listed Mr. Gripas as tenant.  Mr. Yudzon first learned that more than one person occupied the unit when he was presented with the TOPA declarations from both Mr. and Mrs. Gripas at the closing.  Am. Compl. ¶ 11.

After closing, Mr. Yudzon learned that the TOPA requirements had not be satisfied because a complete offer of sale form was never filed with the Department of Housing and Community Development at least 30 days before the closing took place and the unit was in violation of the D.C. Housing Code because five individuals occupied the unit despite the fact that the unit was legally limited to two occupants.  *Id*. ¶¶ 10, 20.  Mr. Yudzon was unaware of the actual number of occupants at the time of the closing.  Due to the TOPA and other housing code violations, Mr. Yudzon was unable to collect rent or market the apartment for three years and engaged in a costly eviction proceeding to remove the tenants.  *Id*. ¶ 17.

Mr. Yudzon brought the instant lawsuit against Sage Title on September 4, 2018 and filed an amended complaint on June 11, 2019.  Mr. Yudzon alleges:  (1) professional negligence; (2) breach of fiduciary duty; (3) violation of the District of Columbia's Consumer Protection

Procedures Act; (4) breach of contract/warranty; and (5) fraudulent misrepresentation. Defendant moved to dismiss all counts on June 25, 2019 and the motion is ripe for review.[3]

## II.     LEGAL STANDARD

Rule 8 of the Federal Rules of Civil Procedure mandates that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a party invokes Rule 12(b)(6) to challenge a complaint for failing to state a claim for relief pursuant to Rule 8, the Court must assess the complaint to determine whether it contains sufficient facts that, when accepted as true, evidence a claim that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A court must treat the complaint's factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555. But a court need not accept as true legal conclusions set forth in a complaint. *Iqbal*, 556 U.S. at 678. "In determining whether a complaint states a claim, the court may consider the facts alleged in the complaint,

---

[3] *See* Mot. to Dismiss Am. Compl. [Dkt. 15]; Def.'s Mem.; Mem. of P. & A. in Opp'n to Sage's Mot. to Dismiss Am. Compl. [Dkt. 16]; Def.'s Reply to Pl.'s Opp'n to Mot. to Dismiss Am. Compl. [Dkt. 18].

4

documents attached thereto or incorporated therein, and matters of which it may take judicial notice." *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006).

### III.     ANALYSIS[4]

All of Mr. Yudzon's claims revolve around the same alleged improper actions by Sage. First, Mr. Yudzon alleges that Sage failed to "conduct a reasonable investigation into whether the requirements of TOPA had been met and whether Yudzon received clear and marketable title." Am. Compl. ¶ 24. And, had Sage conducted reasonable investigation, such as reviewing the status of TOPA compliance with the Department of Housing and Community Development, it would have been aware of the fact that the TOPA requirement had not been met. *Id*. ¶ 26. Second, Mr. Yudzon alleges that Sage failed to disclose that more than one tenant resided in the unit, which was contrary to the Tenancy Addendum to the Contract.

**A. Counts I and II: Professional Negligence and Breach of Fiduciary Duty**

"The elements of an action for professional negligence are the same as those of an ordinary negligence action. The plaintiff bears the burden of presenting evidence which establishes the applicable standard of care, demonstrates that this standard has been violated, and develops a causal relationship between the violation and the harm complained of." *Battle v. Thornton*, 646 A.2d 315, 319 (D.C. 1994) (citing *O'Neil v. Bergan*, 452 A.2d 337, 341 (D.C. 1982)). "To make a legally cognizable claim of breach of fiduciary duty under District of Columbia law, a plaintiff must allege facts sufficient to show (1) the existence of a fiduciary relationship; (2) a breach of the duties associated with the fiduciary relationship; and (3) injuries

---

[4] The Court has diversity jurisdiction under 28 U.S.C. § 1332 because Mr. Yudzon is a citizen of New York; Sage Title is a Maryland limited liability company; and the amount in controversy exceeds $75,000. Venue is appropriate in the District of Columbia because the alleged injury occurred during a sale of real property located in the District. 28 U.S.C. § 1391(b)(2).

that were proximately caused by the breach of the fiduciary duties." *Millennium Square Residential Ass'n v. 2200 M St. LLC*, 952 F. Supp. 2d 234, 248 (D.D.C. 2013). "District of Columbia law has deliberately left the definition of 'fiduciary relationship' flexible, so that the relationship may change to fit new circumstances in which a special relationship of trust may properly be implied." *Id*. (citing *Teltschik v. Williams & Jensen, PLLC*, 683 F. Supp. 2d 33, 46 (D.D.C. 2010)). Thus, to survive a motion to dismiss on both professional negligence and breach of fiduciary duty claims, plaintiff must allege a duty of care, breach, proximate causation, and damages. The Court will consider these claims together.

      1.  Duty

Mr. Yudzon alleges that Sage had a duty to deliver clear, marketable, and insurable title, which included taking necessary steps to ensure the title was marketable, such as investigating whether the Sellers complied with the TOPA requirements. Sage argues that a settlement agent's duty does not include investigation, but only to disclose facts affecting the title of which the settlement agent has actual knowledge.

Sage relies on *Aronoff v. Lenkin Co.*, 618 A.2d 669, 687 (D.C. 1992), to argue that it was only required to disclose information it knew, not conduct further investigation. However, *Aronoff* reverses the dismissal of a fiduciary duty claim where the plaintiff alleged that the agent "knew (*or should have known*)" that a title condition was not satisfied. *Id*. (emphasis added). Mr. Yudzon makes that exact allegation. He alleges that Sage should have known, through reasonable investigation, that the TOPA requirements were not satisfied. To the extent Sage disputes whether a specific duty to investigate was owed, that is a question for summary

judgment, not a motion to dismiss.[5] When evaluating a motion to dismiss, the Court must take all of Plaintiff's well-plead allegations as true, "even if doubtful in fact," and not engage in an evaluation of the facts themselves. *Twombly*, 550 U.S. at 678. Mr. Yudzon has alleged that Sage had a duty to conduct a reasonable investigation.[6] While Sage argues an escrow agent owes no such duty, the allegation is sufficient to survive a motion to dismiss.

   2. *Breach*

Sage also challenges the allegations of breach, which Mr. Yudzon argues occurred when Sage failed to conduct a reasonable investigation into the completion of the TOPA requirements, rather than merely relying on the Seller's affidavits. Sage explains that at the closing the Sellers provided affidavits swearing that the TOPA requirements were met and also provided affidavits signed by two tenants waiving their rights under TOPA. Based on these affidavits made under the penalty of perjury, Sage argues it had no reason to believe the requirements had not been satisfied and that title was not clear, marketable, and insurable.

Like the existence of the duty, Sage again challenges the accuracy of the allegation, not whether Mr. Yudzon has set forth a plausible claim for relief, which is all that is required at this stage. While it is possible at summary judgment or trial the Court or a jury may find that Sage

---

[5] Mr. Yudzon also argues that Sage had a duty to disclose that more than one tenant resided in the unit. Sage argues no duty or breach occurred because Mr. Yudzon was aware of the second tenant before completing the closing, therefore Sage had no further duty to disclose the information. Mr. Yudzon's own Amended Complaint acknowledges that he was aware of a second tenant at the closing because the Sellers provided two signed tenant waiver of rights forms. Am. Compl. ¶ 11. Because Mr. Yudzon was aware of the second tenant before he completed the closing, any claims that Sage failed to notify him of that fact are irrelevant. The Court will dismiss counts one and two to the extent they relate to the Tenancy Addendum.

[6] Sage also argues, without citation or support, that it owed no duty to make disclosures about municipal or housing code violations because those type of violations do not affect title and its only duty related to clear, marketable, and insurable title. Without legal citation, the Court cannot find that Mr. Yudzon has failed to allege a duty.

acted with the appropriate standard of care and did, in fact, not breach its duty to Mr. Yudzon, the Court cannot evaluate such an argument at this stage. Mr. Yudzon has alleged that Sage did not conduct itself consistent with the appropriate standard of care by failing to investigate TOPA compliance. That allegation is sufficient to survive a motion to dismiss.

3. *Causation*

Sage next challenges the allegations of causation because Mr. Yudzon and Sage had the same actual knowledge of the Sellers' TOPA compliance at the time of closing. Sage argues that any injury that resulted from the Sellers' failure to comply fully with the TOPA requirements could have been caused by Mr. Yudzon's own failure to question the Sellers' TOPA affidavits. To survive a motion to dismiss a plaintiff must set forth plausible allegations. *See Twombly*, 550 U.S. at 570. Plausible allegations need not be the most likely option and the existence of other plausible explanations does not negate the plausibility of a plaintiff's allegations. *See id*. at 556 ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."). Mr. Yudzon alleges that Sage's failure to investigate caused him to believe TOPA had been complied with and the title was clear, marketable, and insurable. Based on that belief, Mr. Yudzon followed through with the closing. Mr. Yudzon has plausibly alleged that it was Sage's breach of its duty to investigate that resulted in his eventual injury.

4. *Injury*

Finally, while Sage does not directly challenge the injury alleged by Mr. Yudzon, it does argue that Mr. Yudzon failed to allege that he was injured at the time of closing, when Sage's obligations ended. Sage contends that at the time of closing no defects on the title existed and

the title was insured, which should have protected Mr. Yudzon from actions against the title after closing. Mr. Yudzon alleges in his complaint that Sage's breach resulted in the completion of a sale when the title was still encumbered by the obligations under TOPA. The fact that Mr. Yudzon only learned of the TOPA failures after the closing was completed does not absolve Sage of any liability for the eventual injury. Mr. Yudzon specifically alleges that he lost at least $250,000 in legal fees, rental income, and revenue from missed opportunities as a free lance artist while he was in the District handling the issues with the title. *See* Am. Compl. ¶¶ 17-18.

    5. *Conclusion*

At this stage, the Court must take all of Mr. Yudzon's well-plead allegations as true and he alleges a duty to investigate, failure to investigate, and that the failure to investigate caused him to complete the purchase to his detriment. The motion to dismiss the claims of professional negligence and breach of fiduciary duty will be denied.

    **B. Count III: Violation of District of Columbia Consumer Protection Procedures Act (CPPA)**

Mr. Yudzon alleges that he is a consumer and Sage is a merchant under the CPPA, because he was an individual seeking a business opportunity through the purchase of a leased residential unit and Sage provided a consumer service related to the property transaction. *Id*. ¶¶ 39-40. Mr. Yudzon argues that by stating the title was clear, marketable, and insurable at the closing without first investigating that the TOPA requirements had been complied with, Sage made a misrepresentation in violation of the CPPA by (1) representing that the subject of the transaction—clear, marketable, and insurable title—had been supplied without doing then necessary investigation first, and (2) misrepresenting a material fact which had the tendency to mislead the consumer. *Id*. ¶¶ 43-47 (citing D.C. Code §§ 28-3904(e) and (u)). Sage argues that

Mr. Yudzon's CPPA claim fails because he is not a consumer under the Act and the transaction was not a consumer transaction.

Mr. Yudzon admits in the Amended Complaint that he purchased the unit as a business investment with the possibility of residing in the location in the future. Therefore, Sage contends that Mr. Yudzon did not intend to use the unit "for personal, family, or household purposes," making the CPPA inapplicable. *Edwards v. Ocwen Loan Servicing, LLC*, 24 F. Supp. 3d 21, 26-27 (D.D.C. 2014).

Sage is correct that "the CPPA does not protect businesses engaged in commercial activity," *Shaw v. Marriott Int'l, Inc.*, 605 F.3d 1039, 1044 (D.C. Cir. 2010), and that the subject of the consumer transaction must be intended for "personal, family, or household purposes." *Edwards*, 24 F. Supp. 3d at 26-27. This case is comparable to *Edwards*. In *Edwards*, the plaintiff contracted for a mortgage loan from defendant and later argued, despite inconsistent evidence attached to plaintiff's complaint, that she resided at the mortgaged residence. Due to the contradictory record, the court found that plaintiff failed to plausibly allege that the transaction involved goods or services primarily for personal, household, or family use. *Id*. at 27 (citing *Shaw*, 605 F.3d at 1043). The same is true here. Mr. Yudzon admits in his complaint that he purchased the unit as a business investment. Am. Compl. ¶ 14. Although he also notes that at some point in the future he might use it as his own personal residence if he moves to the District, *id*., that possibility is too speculative for the Court to find the transaction was for personal or household use and for Mr. Yudzon to invoke the CPPA. Therefore, because Mr. Yudzon did not intend to use the unit for personal, household or family purposes, Count Three will be dismissed.

### C. Count IV: Breach of Contract/Warranty

Mr. Yudzon alleges that he entered into an express and implied contract with Sage that exchanged a fee paid by Mr. Yudzon for title services by Sage that included delivering clear,

marketable, and insurable title. *Id*. ¶ 54. Mr. Yudzon claims that Sage breached the contract by not conducting a reasonable investigation into compliance with the TOPA requirements and resulted in a failure to provide clear, marketable, and insurable title. *Id*. ¶¶ 58-59.

To prevail on a breach of contract claim in the District of Columbia, "a party must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009) (citing *San Carlos Irrigation & Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989)); *see also Gebretsadike v. Travelers Home & Marine Ins. Co.*, 103 F. Supp. 3d 78, 84-85 (D.D.C. 2015).

Sage argues that Mr. Yudzon's breach of contract claim fails for two reasons. First, because no contract, express or implied, existed between the parties; and, second, if a contract did exist it would be unenforceable due to the statute of frauds.

*1. Existence of Contract*

Sage argues that as the settlement agent, it was not a party to the contract of sale and owed a fiduciary, not contractual, duty to both Mr. Yudzon and the Sellers. While Sage is correct that the contract for sale and agreement to use an escrow agent between the Sellers and Mr. Yudzon do not constitute written contracts of which Sage is a party or under which Sage owes a duty, Sage has not demonstrated that no implied contract was created when Mr. Yudzon engaged Sage's services as the settlement agent.

Sage appears to argue that a legal principal exists which states that settlement agents do not have contractual duties, only fiduciary duties. However, its supporting caselaw does not go so far. In *Wagman v. Lee*, 457 A.2d 401 (D.C. 1983), the possibility of a contractual duty is presumed, but deemed irrelevant to the determination of whether punitive damages are available

11

because a fiduciary duty also exists. The court in *Wagman* does not state no contractual duty exists with a settlement agent, but rather, "[n]otwithstanding any contractual obligations," a fiduciary duty is owed. *Id*. at 405. *Wagman*, therefore, left open the possibility that both a contractual and fiduciary duty may be owed by a settlement agent to the parties engaged in the sale and purchase of the property.

Furthermore, in *Ferguson v. Caspar*, 359 A.2d 17 (D.C. 1976), the court did not address the potential for a contractual relationship with the settlement agent because the necessary claims where between the buyer and seller. Instead the court merely explained customary practice when using a title company as an escrow agent. *Id*. at 20 ("Our study of the contract of sale and the proceedings which ensued at the settlement meeting confirms our understanding that, as is the usual and customary practice in real estate transactions in the District of Columbia where the parties employ a third party to accept their respective tenders of performance under the contract, a valid escrow arrangement is created and the title company serves in the capacity of an escrow agent in the transaction."). The court in *Ferguson* evaluated the escrow agreement to determine if the buyer and seller complied with their requirements under the agreement, not whether the settlement agent acted properly.

While Mr. Yudzon's allegations are not detailed or lengthy, he does allege an implied contract existed due to the exchange of money for services and the provision of a Scope of Work by Sage. Sage may argue on summary judgment that no implied contract existed.

    2.  *Statute of Frauds*

The D.C. Statute of Frauds states

> An action may not be brought to charge an executor or administrator upon a special promise to answer damages out of his own estate, or to charge the defendant upon a special promise to answer for the debt, default, or miscarriage of another person, or to charge a person

> upon an agreement made upon consideration of marriage, or upon a contract or sale of real estate, of any interest in or concerning it, or upon an agreement that is not to be performed within one year from the making thereof, unless the agreement upon which the action is brought, or a memorandum or note thereof, is in writing, which need not state the consideration and signed by the party to be charged therewith or a person authorized by him.

D.C. Code § 28-3502. Sage argues that Mr. Yudzon's contract claim is barred by the statute of frauds because under Mr. Yudzon's interpretation of the relevant contract Sage made a "special promise to answer for the debt, default, or miscarriage of another person," specifically the Sellers. Sage interprets Mr. Yudzon's allegations that Sage owed a duty to investigate Sellers' TOPA compliance as an argument that Sage made an agreement to answer for the Sellers' potential default. The Court does not agree. Mr. Yudzon alleges that Sage entered into an implied contract to provide him with clear, marketable, and insurable title and that obligation required Sage to conduct a reasonable investigation to make sure the title was unencumbered. Mr. Yudzon does not allege that Sage agreed to ensure Sellers' compliance with the contract for sale, but instead to provide an independent service of delivering clear, marketable, and insurable title. Therefore, the statute of frauds does not apply and a written contract is not required.

Sage's motion to dismiss the breach of contract claim will be denied.

**D. Count V: Fraudulent Misrepresentation**

Mr. Yudzon's final claim is for fraudulent misrepresentation and states that at the closing Sage's agent, Carolyn Burns "represented that Sage had in fact confirmed compliance with TOPA," which she knew or should have known was false. Am. Compl. ¶ 63. The omission was material to Mr. Yudzon's decision to close on the unit and he relied on the representation to his detriment. *Id.* ¶ 65.

To successfully assert a claim for fraudulent misrepresentation under District of Columbia law, "a plaintiff must prove (1) a false representation, (2) in reference to a material

13

fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action taken . . . in reliance upon the representation, (6) which consequently resulted in provable damages." *Regan v. Spicer HB, LLC*, 134 F. Supp. 3d 21, 35-36 (D.D.C. 2015) (citing *Wetzel v. Capital City Real Estate, LLC*, 73 A.3d 1000, 1002-03 (D.C. 2013) (citation omitted)). "A false representation may be either 'an affirmative misrepresentation or a failure to disclose a material fact when a duty to disclose that fact has arisen.'" *Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1131 (D.C. 2015) (citations omitted). "Mere silence," however, "does not constitute fraud unless there is a duty to speak." *Id*.

Federal Rule of Civil Procedure 9(b) requires a claim of fraudulent misrepresentation to be pled with particularity. Fed. R. Civ. Pro. 9(b). Federal Rule of Civil Procedure 8(a)(2)—requiring only a "short and plain statement of the claim"—remains applicable as well. *Intelsat USA Sales Corp. v. Juch-Tech, Inc.*, 935 F. Supp. 2d 101, 107 (D.D.C. 2013). Fraud-related claims must state "the time, place, and content of the false misrepresentations, the fact misrepresented, and what was retained or given up as a consequence of the fraud, as well as the individuals allegedly involved in the fraud." *Id*. (citing *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004)).

The Amended Complaint states that at the closing on July 31, 2015 at 9:00 a.m. Carolyn Burns, Sage's agent, "represented that Sage had in fact confirmed compliance with TOPA," and failed to disclose that Sage had not conducted an investigation into TOPA prior to closing. Am. Compl. ¶¶ 63-64. Mr. Yudzon claims the representation and failure of disclosure was material because he relied upon the representation to decide to go forward with the closing and purchase the unit. *Id*. ¶ 65.

While Sage's arguments for dismissal of Mr. Yudzon's fraudulent misrepresentation claim are founded on the same factual disputes as its arguments against the negligence and fiduciary duty claims, the Court evaluates whether the Amended Complaint contains the necessary allegations and finds Mr. Yudzon does not allege Sage's knowledge of the falsity of the statement or an intent to deceive.  In fact, Mr. Yudzon specifically states that Ms. Burns "either knew or *should have known*" that the statement was false.  *Id*. ¶ 63 (emphasis added).  By acknowledging that Ms. Burns, Sage's agent, might not have been aware of the potential falsity of her statement Mr. Yudzon defeats his own claim of fraudulent misrepresentation.  The allegations do not support a claim of fraudulent misrepresentation and Count V will be dismissed.

### E.  Punitive Damages

Mr. Yudzon's compliant includes a request for punitive damages, which he specifically ties to his CPPA claim.  *Id*. ¶ 51 ("Plaintiff is entitled to punitive damages because Sage's conduct was malicious, reckless, wanton and/or in disregard of the Plaintiff's rights.").

In the District of Columbia, punitive damages are generally available only in actions arising from intentional torts.  *See Calvetti v. Antcliff*, 346 F. Supp. 2d 92, 108 (D.D.C. 2004).  The District of Columbia does not allow recovery for punitive damages for a showing of mere negligence.  *See Harvey v. Mohammed*, 841 F. Supp. 2d 164, 180-81 (D.D.C. 2012); *Jackson v. Corr. Corp. of Am.*, 564 F. Supp. 2d 22, 29 (D.D.C. 2008); *Oliver v. Mustafa*, 929 A.2d 873, 878 (D.C. 2007).  "Rather, punitive damages are reserved for only those tortious acts that are 'replete with malice.'"  *Harvey*, 841 F. Supp. 2d at 181 (quoting *Zanville v. Garza*, 561 A.2d 1000, 1002 (D.C. 1989)).

> Punitive damages are awarded to punish willful and outrageous conduct and thus to deter others from the commission of like acts. An act is wanton and reckless when it is done in such a manner and

>under such circumstances as to show intentional wrongdoing and a conscious disregard of the result upon the rights of others that may flow from the doing of the act. However, punitive damages may not be awarded for negligence, even gross negligence. Punitive damages may not be awarded where an act though willful in itself is committed in the honest assertion of a supposed right or discharge of duty, or without any evil or bad intention.

*Wagman*, 457 A.2d at 404 n.4.

Sage argues that the Amended Complaint does not include specific allegations of willful or outrageous conduct, but instead merely alleges negligence or average breach of contract. The Court agrees. Mr. Yudzon's complaint only requests punitive damages with respect to its CPPA claim, which the Court has dismissed, and the Amended Complaint does not include any allegations that rise to the level of wanton and reckless behavior. The request for punitive damages will be dismissed.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Defendant's Motion to Dismiss, Dkt. 15. Counts I and II (professional negligence and breach of fiduciary duty) will be dismissed in part and only remain as to the alleged duty to investigate TOPA compliance. Count III (CPPA), Count V (fraudulent misrepresentation), and the claim for punitive damages will be dismissed in their entirety. A memorializing Order accompanies this Memorandum Opinion.

Date:  May 22, 2020

*/s/ Thomas F. Hogan*
_____
THOMAS F. HOGAN
United States District Judge